David M. Fogg (ISBN 7610)
**ELC Legal Services, LLC**
3142 W. Belltower Drive
Meridian, Idaho 83646
Telephone: (208) 813-9220
David@ELCLegal.com

Paul R. Mangiantini, Esq. (ISBN 5883)
**Mangiantini Law Office**
1139 S Island Glenn Way
Eagle, Idaho 83616
Direct: (208) 870-5673
Paul@Mangiantinilaw.com

Attorneys for Plaintiffs

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

In Re:

| | |
|---|---|
| PARADIGM PROPERTY SOLUTIONS, LLC<br><br>Debtor. | **CASE NO.: 18-00850-JMM**<br><br>Chapter 7 |
| T STREET LLC, an Idaho limited liability company, DOHENY LLC, an Idaho limited liability company, TRESTLES LLC, an Idaho limited liability company, OAKLANDS LLC, an Idaho limited liability company, EJC LLC, an Idaho limited liability company, EUDA LLC, an Idaho limited liability company, TAMMARA HERON, trustee of the Heron Family Trust, and SILVER FOX MANAGEMENT LLC, an Idaho limited liability company,<br><br>      Plaintiffs,<br>vs.<br><br>PARADIGM PROPERTY SOLUTIONS, LLC, an Idaho limited liability company, RONALD JAQUES, an individual, and JANE AND JOHN DOES 1-10,<br>      Defendants. | Adv. No. _____ |

**Adversary Proceeding Case No. 18-00850-JMM – Page 1**

**COMPLAINT OBJECTING TO DISCHARGE OF DEBT
PURSUANT TO 11 U.S.C. §§ 727(a)(3), 523(a)(2)(A), (a)(2)(B), (a)(4), AND (a)(6)[1]**

Plaintiffs T STREET LLC, an Idaho limited liability company, DOHENY LLC, an Idaho limited liability company, TRESTLES LLC, an Idaho limited liability company, OAKLANDS LLC, an Idaho limited liability company, EJC LLC, an Idaho limited liability company, EUDA LLC, an Idaho limited liability company, TAMMARA HERON, trustee of the Heron Family Trust, and SILVER FOX MANAGEMENT LLC, an Idaho limited liability company (collectively referred to as the "ELC Creditors"), by counsel, hereby object to the discharge of the debts that Defendants owe them pursuant to §§ 727(a)(3), 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). As grounds ELC Creditors allege and state the following:

## PRELIMINARY STATEMENT

1. On June 11, 2018, ELC Creditors filed, in Ada County District Court, the case captioned *T Street LLC, et. Al. v. Paradigm Property Management, LLC et.al.*, case number CV01-18-10654, alleging, among other claims, breach of contract, conversion, breach of fiduciary duty, constructive trust, and fraud. Thereafter, on June 28, 2018, ELC Creditors were granted an injunction against Debtors freezing all accounts. Additionally, the Court appointed a receiver to take control of the companies.

2. The following day, June 29, 2018, the principal of Debtor, Ronald Wade Jaques ("Jaques") filed two voluntary petitions for bankruptcy, *In Re Paradigm Property Solutions, LLC,* case number: 18-00850 - TJM, and *In Re Rentmaster of Rexburg, LLC*, case number 18-00850-JMM. Each voluntary petition identifies the other as a co-debtor (reference Official Form 201, page 2 ¶ 10).

---

[1] Unless otherwise indicated, all chapter, section, and other statutory references in this Complaint are to the bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Code"), and all rule references are to the Federal Rules of Bankruptcy Procedure 1001-9037.

3. On August 20, 2018, Ronald Wade Jaques, filed a voluntary petition for bankruptcy, *In the Matter of Ronald Wade Jaques*, case number, 18-01092-TLM.

4. Prior to the above referenced bankruptcy proceedings, ELC Creditors engaged Jaques Debtors (hereafter defined) to manage various properties. Jaques Debtors were hired to, among other duties, collect rents and security deposits, manage the upkeep of the properties, lease and terminate tenants, hold owner reserves, pay taxes and other fees associated with the properties, and various other management duties typical for a property manager.

5. As of the date of the Jaques Debtors bankruptcy petitions, none of the security deposits, missing rents, or owner reserves have been accounted for, totaling an approximate amount of $199,359.19 owed to the Heron Family Trust, $131,000.00 owed to T STREET LLC, DOHENY, LLC, TRESTLES, LLC, OAKLANDS, LLC, EJC, LLC, EUDA, LLC collectively, and $25,000 owed to SILVER FOX, LLC.

6. Pursuant to §§ 727(a)(3), 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6), ELC Creditors seek: (i) damages in an amount to be determined at the time of trial, but no less than $350,000.00, (ii) declaration that such debts are non-dischargeable, (ii) relief from the automatic stay in order to pursue collection, including garnishment of wages, liens, or any other remedies available, for any and all judgments, obtained against Jaques, and (iii) that such judgment is against Jaques individually, or any entity in which Jaques has an interest, or obtains an interest, now known, or in the future discovered, and any property Jaques has or in the future acquires.

**JURISDICTION, VENUE, AND STATUTORY BASIS FOR RELIEF**

7. This is a civil proceeding which arises out of and is related to the above-referenced bankruptcy proceeding which is pending before this Court, and in which plaintiffs seek an order and decree declaring that the debts owed to ELC Creditors are non-dischargeable pursuant to §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).

8. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334, 28 U.S.C. §§ 157, and has exclusive jurisdiction pursuant to 28 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).

9. This is a core proceeding pursuant to, among other sections, 28 U.S.C. §§157(b)(2)(B), (E), (G), and (I).

10. Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§1408(2) and 1409(a).

11. The statutory basis for the relief sought herein, among other sections is 11 U.S.C. §523(a) and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## THE PARTIES

12. At all times relevant to the allegations herein, T Street LLC, Doheny LLC, Trestles LLC, Oaklands LLC, EJC LLC, EUDA LLC, and Silver Fox Management, LLC, have been Idaho limited liability companies.

13. 8. At all times relevant to the allegations herein, and upon information and belief, Paradigm has been an Idaho limited liability company and was, at all relevant times hereto, doing business in Idaho.

14. At all times relevant to the allegations herein, Tammara Heron has been trustee of The Heron Family Trust and a resident of the state of Idaho.

15. At all times relevant to the allegations herein, and upon information and belief, Jaques has been a resident of the state of Idaho.

## BACKGROUND

16. Prior to 2010, Jaques had been part of a failed mortgage business. On or about March 26, 2010, Jaques became the owner of a property management company known as Rentmaster of Rexburg, LLC ("Rentmaster"). The actual purchase price and tender of funds between seller(s) and Jaques remains unclear, however, a $385,000 note was exchanged between

the parties. At that time Rentmaster had approximately 500 units ("doors") under management. By August 2012, Rentmaster had approximately 600 doors under management.

17. In August 2012, Jaques and three others formed Paradigm Property Solutions, LLC ("Paradigm"). Jaques, Clark, Edgar, and Holladay are identified on the original limited liability company filing as its members. Paradigm then purchased Legacy Management Group, LLC ("Legacy") in November 2013. It is believed that the entire purchase amount was memorialized in an owner carry note, with no cash payment, for $250,000. It is believed that Legacy had approximately 600 doors at that time. Hereinafter Rentmaster, Paradigm, and Jaques shall be referred to collectively as "Jaques Debtors".

18. In April 2014, Legacy and Paradigm were consolidated, with Paradigm as the remaining entity. The 600 Legacy doors were combined with Paradigm's existing doors, with additional doors being contributed from the remaining members of the newly consolidated entity, for a combined total of approximately 1,000 to 1,500 doors. As of April 2014, Jaques had not contributed any significant amount for the purchases of Rentmaster, Paradigm, or Legacy, but had instead leveraged promissory notes and revenues from one entity to the other. Essentially, Jaques was creating a house of cards using funds (including security deposits and owner reserves) as ready cash to fund the next acquisition.

19. In September 2016, Clark expressed reservations about the way the company was being run. Jaques and Holladay informed Clark he was out of the business. Clark filed suit in October 2016 and received a money judgment in the amount of $125,000, which was paid in June and August of 2017. The specific source of the funds to pay Clark remains unknown.

20. Nine days after Clark's removal from the company, Holladay loaned Jaques $50,000 to buyout Edgar's share of the company. Thereafter in May 2017 Holladay agreed to turn over his remaining 25% share for a note of $125,000, at an interest rate of 10%, over 15 years.

**Adversary Proceeding Case No. 18-00850-JMM – Page 5**

21. Between February 2015 and November 2016 various ELC Creditors engaged Jaques' companies to manage their properties. Despite significant turnover of personnel, the change in management, as noted above, ELC Creditors did not became aware of issues with the management of their respective properties until late 2017 and early 2018. In December 2017 distribution checks were returned as insufficient funds. While such was quickly remedied, it was an indication of things to come. By March 2018 liens were being placed on properties for failure to pay for services, taxes, and utilities. In addition, distribution payments were not being made. Jaques claimed that these vendors were in error and that services had been paid for when, in reality, they had not. A review of the March 2018 security deposit accounts showed that the accounts were nearly depleted. Further indication that Jaques' house of cards was crumbling occurred in April and May when it was discovered that owner reserves were depleted, and utility services were being shut off at various properties for lack of payment. At that same time, various vendors began reaching out to ELC Creditors directly for payment of services dating back to August 2017, that had not been paid.

22. Through all this, as late as May 2018, Jaques asserted to ELC Creditors that security deposits and owner reserves were intact and that the above issues were nothing more than errors. This assertion was categorically untrue.

23. During May 2018, Tammara Heron ("Heron") received a late notice payment for taxes due in the amount of $60,789.50. At the time Heron engaged Jaques she agreed to, and had provided Jaques with, an owner reserve account of $50,000.00. Given the hefty owner reserve coupled with monthly proceeds from rents, Heron questioned Jaques about the delinquent payment, at which time Jaques produced a forged Ada county receipt showing the taxes as paid. It was discovered that Jaques, knowing that he had absconded Heron's reserve account, had paid the taxes late from his personal checking account.

24. Heron and other of the ELC Creditors began talking and have since discovered numerous instances of fraud, embezzlement, conversion, and comingling.

## PLAINTIFFS ASSERT THAT ALL CLAIMS ARE AGAINST RENTMASTER AND RONALD WADE JAQUES PERSONALLY

25. ELC Creditors repeat and reallege the allegations contained in each and every paragraph herein above, as though fully set forth herein.

26. In addition to claims against Paradigm, ELC Creditors asserted all claims against Ronald Wade Jaques personally, including a claim to pierce the corporate veil of Paradigm and impose alter ego liability upon the Jaques, based on his use of Paradigm's funds for personal gain.

27. Jaques, upon receiving Paradigm monies, improperly dispatched those funds to personal accounts and/or accounts of other failing business owned by Jaques. Jaques made payments to himself, his wife, his children, and various services for personal benefits.

28. Jaques failed his duty to operate Paradigm as a legitimate business and abused the corporate form by, among other things, improperly expending hundreds of thousands of company dollars for personal benefit and failing to keep proper corporate records.

## COUNT ONE: OBJECTION TO DEBTOR'S DISCHARGE PURSUANT TO § 523(a)(2)(A)

29. ELC Creditors repeat and reallege the allegations contained in each and every paragraph herein above, as though fully set forth herein.

30. Section 523(a)(2)(A) excepts from discharge any debt for money, property, services or credit, to the extent obtained by false pretenses, a false representation, or actual fraud. A claim under § 523(a)(2)(A) requires that the: (1) the debtor made representations; (2) that at the time he knew were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

31. Jaques made statements and representations of fact asserting that property taxes, insurance premiums, vendors, and service providers had been timely paid, which statements were knowingly false and for which Jaques Debtors were unable to perform. Jaques told Tammara Heron that distributions to her owner trust accounts had been paid, when such had not. Jaques told Plaintiffs that their tenants' security deposits were safe, when such had been converted for personal expenses months, or even years before. During Jaques Debtors various 341 meetings Jaques admitted that Ms. Heron's owner distributions had never been deposited, that taxes were paid from a personal account only after Jaques Debtors had failed to pay such on time, that security deposits were gone, that owner reserves had been used to pay personal expenses, and that Jaques had forged documents related to Ms. Heron's property taxes. Further, review of receipts from Jaques Debtors bank accounts, as well as third-party statements, show that taxes, insurance premiums, vendors, and services providers had not been paid and that tenant security deposits were missing from ELC Creditors' trust accounts.

32. These statements were material in that they represented the core of Jaques Debtor's contractual and fiduciary duties to ELC Creditors and their tenants. Further, the statements related to hundreds of thousands of dollars Jaques Debtors were to hold in trust for ELC Creditors and their tenants. Not only did Jaques acknowledge the falsity of some of these statements, Jaques altered documents to hide the truth.

33. Jaques intended that ELC Creditors would rely on these false statements, and thereby not terminate their respective management agreements and/or demand the return of the trust money and security deposits, which had already been commingled and converted. Further, ELC Creditors, until they began to receive late payment notices and other information, were unaware that Jaques Debtors' statements were false. ELC Creditors relied on such affirmations and did not inquire further or terminate their contractual agreements with Jaques Debtors. ELC Creditors' reliance was reasonable given that Jaques Debtors represented a large property

management concern with many property owners across the state. Further, Jaques Debtors provided ELC Creditors falsified documents that supported the truth of the false statements. The terms of the property management agreements identified Jaques Debtors' obligations, and ELC Creditors had no reason to question the validity or accuracy of the statements provided.

34. As a direct, consequent, proximate and foreseeable result of Jaques misrepresentations, hundreds of thousands of dollars of ELC Creditors' rents and their tenants' security deposits are missing and not available for reimbursement or distribution. The exact amount of damage sustained by ELC Creditors will be proven at trial.

35. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 523(a)(2)(A).

## COUNT TWO: OBJECTION TO DEBTOR'S DISCHARGE PURSUANT TO § 523(a)(2)(B)

36. ELC Creditors repeat and reallege the allegations contained in each and every paragraph herein above, as though fully set forth herein.

37. Section 523(a)(2)(B) excepts from discharge any debt for money, property, services or credit, to the extent obtained by false written statement. A creditor asserting a claim under § 523(a)(2)(B) bears the burden of proving, by a preponderance of the evidence, that the use of a writing is: (i) materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

38. Jaques fabricated financial and transactional documents representing transactions for rent, security deposits, and services. While not a typical financial statement, such were provided by Jaques with the specific intent to mislead ELC Creditors, as to Jaques' Debtors financial health. Upon further investigation of documents obtained, ELC Creditors believe that

Jaques also overstated charges on ELC Creditors monthly account statements, while converting the additional funds.

39. As noted above, ELC Creditors reasonably relied on the monthly account statements, the transaction summaries, and statements regarding their funds, as well as the accounting documents, in determining the financial health and stability of the company. Jaques Debtors intended that ELC Creditors would rely on these false written statements and hereby not challenge Jaques Debtors as to the financially stability of his companies.

40. As a direct, consequent, proximate and foreseeable result of Jaques Debtors misrepresentations, hundreds of thousands of dollars of ELC Creditors' rents and their tenants' security deposits are missing and not available for reimbursement or distribution. The exact amount of damage sustained by ELC Creditors will be proven at trial.

41. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 523(a)(2)(B).

## COUNT THREE: OBJECTION TO DEBTOR'S DISCHARGE PURSUANT TO § 523(a)(4)

42. ELC Creditors repeat and reallege the allegations contained in each and every paragraph herein above, as though fully set forth herein.

43. Section 523(a)(4) excepts from discharge debts that arise from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." ELC Creditors are not raising a claim of larceny but do contend and alleged the debts at issue arose from Jaques Debtors' fraud or defalcation while acting in a fiduciary capacity or, in the alternative, from Jaques Debtors' embezzlement of funds.

44. <u>Fraud or defalcation while acting in a fiduciary capacity</u>. Under § 523(a)(4) fraud or defalcation occurs when a debtor acting in a fiduciary capacity commits fraud or defalcation. The definition of "fiduciary capacity" under § 523(a)(4) is a narrow one and is governed by federal

law. These requirements exclude constructive, resulting or implied trusts, and while the meaning of "fiduciary capacity" is a question of federal law, state law is to be consulted to ascertain whether the requisite fiduciary relationship exists. The agreement between ELC Creditors and Jaques Debtors specifically identifies ELC Creditors accounts as "Trust Accounts".

      a.    Under Idaho law a security deposit shall continue to be the property of the tenant making such deposit, shall not be commingled, is to be returned to the tenant upon termination of the lease, and cannot be used or retained to cover normal wear and tear. *Idaho Code §6-321*. These obligations arise upon the landlord's receipt of the deposit.

      b.    Jaques Debtors, after receiving the security deposits from tenants, and as agents of ELC Creditors, owed tenants and ELC Creditors a duty as fiduciaries. By converting the rents and security deposits, for personal expenses, without the instruction or consent, and against the interests of ELC Creditors and/or tenants, Jaques Debtors breached his fiduciary obligations.

      c.    As a direct, consequent, proximate and foreseeable result of Jaques Debtors fraud while acting in a fiduciary capacity, hundreds of thousands of dollars of ELC Creditors rents and their tenant's security deposits are missing and not available for reimbursement or distribution. The exact amount of damage sustained by ELC Creditors will be proven at trial.

45.    <u>Embezzlement</u>. Embezzlement under § 523(a)(4) does not require the existence of a fiduciary relationship. In the nondischargeability context, embezzlement is defined as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. Three elements are required to show embezzlement, (i) the property was rightfully in the possession of a nonowner, (ii) the nonowner appropriated the property for a use other than which it was entrusted, and (iii) there are circumstances indicating fraud.

      a.    It is undisputed that Jaques Debtors was in possession of ELC Creditors funds via management agreements, that Jaques had signature authority on ELC Creditors accounts,

and was authorized to use the funds to pay bills, manage the properties, and in all aspects perform duties consistent with property management for the benefit of the ELC Creditors.

    b.  Despite the fact that Jaques Debtors were not authorized by ELC Creditors to use the funds for any other purpose, it has been determined that, among of things, Jaques used ELC Creditors' funds to pay for personal items, float business expenses across Jaques companies, and pay for Jaques childrens' college expenses.

    c.  By using ELC Creditors funds for purposes other than what was authorized and intended Jaques Debtors clearly intended to permanently deprive ELC Creditors of their funds. Moreover, should Jaques claim that there was an intent to somehow repay ELC Creditors, at a later time, such an argument would ultimately fail, given that the intent to deprive the rightful owner of funds even temporarily, does not negate the element of intent of embezzlement.

    d.  Jaques, Debtors after receiving the security deposits from tenants embezzled ELC Creditors funds with an intent to permanently deprive ELC Creditors of the fund that should have been remitted to them.

46.  As a direct, consequent, proximate and foreseeable result of Jaques embezzlement, hundreds of thousands of dollars of ELC Creditors rents and their tenant's security deposits are missing and not available for reimbursement or distribution. The exact amount of damage sustained by ELC Creditors will be proven at trial.

47.  By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 523(a)(4).

## COUNT FOUR: OBJECTION TO DEBTOR'S DISCHARGE PURSUANT TO § 523(a)(6)

48.  ELC Creditors repeat and reallege the allegations contained in each and every paragraph herein above, as though fully set forth herein.

       a.      Section 523(a)(6) requires a showing that both willful and malicious injury has occurred. Within the meaning of § 523(a)(6), willfulness means a "deliberate or intentional injury. In this case Jaques certainly was cognizant that his improper actions alleged above would injure the ELC Creditors companies and Trusts. A malicious claim requires; (i) a wrongful act, (ii) done intentionally, (iii) which necessarily causes injury, and (iv) is done without just cause or excuse.  As above, Jaques Debtors were under contract with the ELC Creditors, which agreements were breached, without any reasonable explanation or justification, and with the full knowledge and understanding of the immediate loses to the ELC Creditors.

49.      As a direct, consequent, proximate and foreseeable result of Jaques Debtors willful and malicious injury to the ELC Creditors, hundreds of thousands of dollars of ELC Creditors' rents and their tenants' security deposits are missing and not available for reimbursement or distribution. The exact amount of damage sustained by ELC Creditors will be proven at trial.

50.      By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 523(a)(6).

**COUNT FIVE: OBJECTION TO
<u>DEBTOR'S DISCHARGE PURSUANT TO § 727(a)(3)</u>**

51.      ELC Creditors repeat and reallege the allegations contained in each and every paragraph herein above, as though fully set forth herein.

52.      Section 727(a)(3) provides that the Court shall grant a discharge, unless "… the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case".

53.      Jaques, operated his businesses as his alter egos, seeking to shield himself from personal liability while at the same time using funds of these businesses for personal purposes.

Moreover, Jaques, concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which Jaques Debtor's financial condition or business transactions might be ascertained.

54.     As a direct, consequent, proximate and foreseeable result of Jaques actions, hundreds of thousands of dollars of ELC Creditors' rents and their tenants' security deposits are missing and not available for reimbursement or distribution. The exact amount of damage sustained by ELC Creditors will be proven at trial.

55.     By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(3).

## RELIEF FROM THE AUTOMATIC STAY TO EXERCISE ALL REMEDIES AVAILABLE TO COLLECT CREDITOR'S FUNDS

56.     ELC Creditors repeat and reallege the allegations contained in each and every paragraph herein above, as though fully set forth herein.

57.     As of the petition dates ELC Creditors' funds continue to be retained by Jaques, or in accounts held be Jaques and/or Jaques companies. Section 362(a) of the Bankruptcy Code prohibits the commencement or continuation of any actions against a debtor that was or could have been commenced prior to the bankruptcy filing, or which seeks to recover for any claim that arose prior to the commencement of the bankruptcy case. Should this Court find that the Jaques claim is nondischargeable the automatic stay provisions imposed by §362 of the Bankruptcy Code should be lifted to allow prosecution and/or collection of the amount determined at the time of trial.

## ATTORNEYS' FEES AND COSTS

58.     ELC Creditors repeat and reallege the allegations contained in each and every paragraph herein above, as though fully set forth herein.

59.     ELC Creditors have been required to retain the services of counsel to assist in the prosecution of this matter and in the State case and are entitled to recover their reasonable costs

and attorneys' fees pursuant to Idaho Rule of Civil Procedure 54, Idaho Code §§ 12-120 and 12-121, and other applicable law.

WHEREFORE, Plaintiffs prays for judgment against Jaques Debtors as follows:

1. On Count One, a judgment, pursuant to §523(a)(2)(A) that Jaques Debtors debt is nondischargeable in an amount to be determined at the time of trial, but no less than $350,000.

2. On Count Two, a judgment, pursuant to §523(a)(2)(B) that Jaques Debtors debt is nondischargeable in an amount to be determined at the time of trial, but no less than $350,000.

3. On Count Three, a judgment, pursuant to §523(a)(4) that Jaques Debtors debt is nondischargeable in an amount to be determined at the time of trial, but no less than $350,000.

4. On Count Four, a judgment, pursuant to §523(a)(6) that Jaques Debtors debt is nondischargeable in an amount to be determined at the time of trial, but no less than $350,000.

5. On Count Five, a judgment, pursuant to §727(a)(3) that Jaques Debtors debt is nondischargeable in an amount to be determined at the time of trial, but no less than $350,000.

6. On all counts that Ronald Wade Jaques is the alter ego of Paradigm and is personally liable for all sums awarded.

7. Such other and further relief as is just and proper.


Dated this 21st day of November 2018.

/s/ Paul Mangiantini
/s/ David M. Fogg
Attorneys for ELC Creditors